EXHIBIT 2

# EXHIBIT 2
# UNPUBLISHED DECISIONS CITED


| Decision | Exhibit Page |
|---|---|
| 1. Cuomo v. P'ships, No. 26 C 7119, Dkt. 19 (N.D. Ill. July 28, 2026) | 3–7 |
| 2. Neman Bros. & Assocs., Inc. v. P'ships & Unincorporated Ass'ns Identified on Schedule "A," No. 24 C 05666, Dkt. 112 (N.D. Ill. Jan. 23, 2025) | 8–9 |
| 3. Zou v. Entities, No. 23-cv-16600, Dkt. 60 (N.D. Ill. Mar. 8, 2024) | 10–12 |
| 4. Milwaukee Elec. Tool Corp. v. Individuals, No. 24 C 12487, Dkt. 156 (N.D. Ill. May 28, 2025) | 13–19 |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **RIVERS CUOMO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 26 C 7119** |
| **v.** | ) | |
| | ) | **Judge Jorge Alonso** |
| **PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS ON SCHEDULE "A",** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER

Plaintiff's motions [3] [10] [14] [15] are denied. For the reasons stated herein, the Court concludes that the 97 defendants in this case are misjoined. Plaintiff's complaint [1] is dismissed without prejudice. Plaintiff may file an amended complaint consistent with this Order by 8/20/26.

## STATEMENT

This case is one of the thousands of "Schedule A" cases that have inundated the courts of this judicial district in recent years. *See Bailie v. P'ships & Unincorporated Ass'ns Identified on Schedule A,* No. 24 CV 2150, 2024 WL 2209698, at *1 (N.D. Ill. May 15, 2024) (describing the Schedule A litigation model); *see also Zorro Prods., Inc. v. Individuals, Corps., Ltd. Liab. Cos., P'ships, & Unincorporated Ass'ns Identified on Schedule A*, No. 23-CV-5761, 2023 WL 8807254, at *2 (N.D. Ill. Dec. 20, 2023). Plaintiff, Rivers Cuomo, the frontman of the venerable rock band "Weezer," has filed this trademark infringement lawsuit under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), against ninety-seven unknown defendants who operate certain e-commerce stores, each of which sells merchandise bearing Plaintiff's "Weezer" trademark. The Court *sua sponte* raised the propriety of joinder and directed Plaintiff to file a supplemental memorandum addressing joinder, or else amend the complaint to assert claims against a smaller subset of properly joined defendants. Plaintiff has filed a helpful and well-written supplemental memorandum. The Court concludes, however, that the defendants are misjoined.

Federal Rule of Civil Procedure 20 provides that defendants may be joined in a single action if: "**(A)** any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and **(B)** any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). Under Federal Rule of Civil Procedure 21, misjoinder is "not a ground for dismissing an action," but a district court "may, at any time, on just terms, add or drop a party," or "sever any claim against a party."

When it comes to screening Schedule A cases for compliance with Rule 20, the courts of this district are now more or less evenly split between two positions. Some judges *sua sponte* raise the issue of joinder and hold that, without some specific showing that the defendants' infringing activities are likely to be factually connected, the defendants are misjoined. The leading case for this position is *Estee Lauder Cosmetics, Ltd. v. Partnerships & Unincorporated Associations Identified on Schedule A*, 334 F.R.D. 182, 188 (N.D. Ill. 2020). Other judges allow Schedule A plaintiffs to join large numbers of unknown defendants in a single action, without addressing joinder unless and until defendants appear and raise the issue themselves. The leading case for this position is *Bose Corp. v. Partnerships & Unincorporated Associations Identified on Schedule "A"*, 334 F.R.D. 511, 516 (N.D. Ill. 2020).

In his supplemental memorandum, Plaintiff argues that his claims against all ninety-seven defendants are properly joined because they all arise out of the same "occurrence" or "series" of occurrences, under Rule 20(a)(2). For this position, he relies heavily on *Bose.*

*Bose* explained that, although defendants do not participate in the same transaction or series of transactions merely by "'committing the same type of violation in the same way,'" without some showing of coordination or cooperation among them, *see Bose*, 334 F.R.D. at 516 (quoting *AF Holdings, LLC v. Does 1-1058*, 752 F.3d 990, 998 (D.C. Cir. 2014)), the aggregated intellectual property violations asserted in a Schedule A case might still qualify as an "occurrence" or series of occurrences. The dictionary definition of "occurrence" is broader than that of "transaction," and, "[u]nlike a 'transaction,' an 'occurrence' is not necessarily the product of joint or coordinated action." *Id.* at 516. The *Bose* court reasoned that the broad reach and instantaneous contact enabled by the internet may cause the proliferation of certain "[i]ndividual actions[,] which alone may have minimal impact," but which have a "substantial impact through aggregation." *Id.* The court considered that aggregated impact to amount an "an 'occurrence' of mass harm," which "easily can be inflicted even if there is no express 'transactional' coordination among the attackers." *Id.* Further, the court explained, the overseas internet sellers sued in Schedule A cases "allegedly take advantage of a set of circumstances—the anonymity and mass reach afforded by the internet and the cover afforded by international borders—to violate . . . trademarks with impunity" because, as soon as one internet store operator is shut down, he can pop up somewhere else, like in "a game of 'whack-a-mole.'" *Id.* "[I]t is the swarm—the fact that all Defendants are attacking at once—that is the defining aspect of the harm," so, the court found, "the injuries in the aggregate," are what constitute the "occurrence." *Id.* at 517. And, "[f]rom the *plaintiff's perspective* (which is the appropriate perspective at the pleading stage)[,] it is irrelevant whether the swarm is intentionally coordinated or simply a product of market forces enabled by the internet." *Id.* The court also explained that, in most Schedule A cases, the foreign defendants do not appear, so there is no point in severing the various defendants; even severed, the cases would proceed the same way, namely, to default judgment. But, "[t]o the extent any defendant appears and raises defenses that differentiate it from the swarm, the Court can always sever that defendant's case." *Id.*

Until recently, this Court tended to agree with this approach, particularly as to the practical concerns expressed in *Bose*. It seemed to make sense, at the pleading stage, to focus on the plaintiff's perspective and the "market forces enabled by the internet," which permitted a "swarm" of internet stores to prey on a rightsholder's goodwill. *See Bug Art v. Schedule A Defs.*, No. 24-cv-07777, at 5 (N.D. Ill. Oct. 8, 2024), Dkt No. 28 ("[A]the pleading stage, plaintiffs do not need

to allege facts that definitively establish a link among the defendants; they need only allege facts that plausibly establish such a connection."). At the time of *Bose*, most Schedule A cases seemed to involve counterfeit goods that took advantage of the reputation of big brands; it was easy to see the plaintiffs' point of view and why they complained of playing a game of whack-a-mole, with the value of their intellectual property suffering a death by a thousand cuts, each one seemingly insignificant individually, but ruinous in the aggregate. In *Bose* itself, the defendants sold counterfeit "headphones, speakers, and related audio components." Mot. for Default J., *Bose Corp. v. Partnerships & Unincorporated Associations Identified on Schedule "A"*, Case No. 19 C 7467, at 2 (N.D. Ill. Jun. 11, 2020), Dkt. No. 70. To the extent that such counterfeit goods lack the high level of quality that genuine products possess, the counterfeiting risks harming the rightsholder's goodwill and damaging its brand, causing a reputational injury that is difficult to quantify and difficult to remedy. The Court believed, for reasons articulated in *Bose*, that the fairest and most efficient approach permitted joining large numbers of these counterfeit product cases and severing defendants who presented individualized issues later, if any such issues arose.

Much has changed in Schedule A litigation in the intervening six years. Schedule A cases do not proceed smoothly to default judgment as often as they once did. With increasing frequency, defendants do appear, often individually or in small groups, taking disparate positions, in a way which tends to suggest that their actions are not meaningfully coordinated or cooperative, and which tends to undermine any argument that mass joinder promotes judicial efficiency. *See Anagram Int'l, LLC v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 24 C 12194, 2025 U.S. Dist. LEXIS 43230, at 14-15 (N.D. Ill. Feb. 21, 2025) (citing *Toyota Motor Sales v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 24 C 9401, at 4 (N.D. Ill. Nov. 18, 2024), Dkt. No. 27 ("While true that many defendants default in Schedule A cases, there are times when multiple defendants appear, seek different relief, require multiple hearings on varying motions, have different dates, and so on.")).

In making decisions about what is plausible at the pleading stage, when limited facts are available, the Court must "draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). These factors pointed the Court one way when *Bose* was decided, but now, six years later, they point in a different direction. With respect to *Bose*'s emphasis on "aggregate" harm enabled by the internet, the Court no longer considers that aspect of Schedule A litigation to favor joinder. "There are innumerable bad acts conducted using the internet that have a substantial impact in the aggregate – courts must require more than that to establish joinder . . . The lack of limiting principle inherent in [*Bose*'s] approach flies in the face of a 'consistent line of cases in this District holding that Rule 20(a)'s requirement for a common transaction or occurrence is not satisfied where multiple defendants are merely alleged to have infringed'" the same intellectual property. *Zaful (Hong Kong) Ltd. v. Individuals, Corps., Ltd. Liab. Companies, Partnerships, & Unincorporated Associations Identified on Schedule A*, No. 24 CV 11111, 2025 WL 71797, at *4 (N.D. Ill. Jan. 10, 2025) (quoting *Bailie*, 734 F. Supp. 3d at 803).

Upon reexamining *Bose*, the Court finds little support for its reading of Rule 20's term "occurrence" to have a broader meaning than "transaction." It is true that the dictionary definitions of the words are different, but in the context of Rule 20, courts have typically "treat[ed] the terms 'transaction' and 'occurrence' synonymously, and use[d] the concept of 'logical relationship' to define 'transactional relatedness' under the permissive party joinder rule." 4 Moore's Federal

Practice - Civil § 20.05 (2026); *see In re EMC Corp.*, 677 F.3d 1351, 1358 (Fed. Cir. 2012) ("Thus, independent defendants satisfy the transaction-or-occurrence test of Rule 20 when there is a logical relationship between the separate causes of action."). The Court is not convinced that the term "occurrence" can bear the weight *Bose* places on it, in the context of Rule 20. Given the "consistent line of cases . . . holding that 'Rule 20(a)'s requirement for a common transaction or occurrence is not satisfied where multiple defendants are merely alleged to have infringed the same patent or trademark,'" there must be some "limiting principle," or the *Bose* approach becomes an exception that risks swallowing the rule courts have established. *Bailie*, 734 F. Supp. 3d at 804 (quoting *Estee Lauder*, 334 F.R.D. at 187). If there is some such "limiting principle," the Court is not able to identify and articulate it. *See Estée Lauder Cosmetics Ltd. v. P'ships & Unincorporated Ass'ns Identified on Schedule A*, No. 20 C 845, at 6 (N.D. Ill. June 22, 2020), Dkt. No. 40.

Even if this Court were convinced by the logic of *Bose*, it is not convinced that that logic applies here. Sometimes Schedule A plaintiffs are still major consumer brands like in *Bose*, but when they are not, the suggestion that the claims are part of a "swarm" often strikes the Court as weaker. *See, e.g.*, *Zhang v. Individuals, Corps., Ltd. Liab. Companies, Partnerships, & Unincorporated Associations Identified on Schedule A to Complaint*, No. 24 C 8739, at 11 (N.D. Ill. Jun. 24, 2026), Dkt. No. 183. Plaintiff did not become famous by making Weezer-branded T-shirts that were renowned for their quality. He became famous as the frontman of a rock band called Weezer. If defendants sell poor quality T-shirts, any resulting harm to the "Weezer" brand, if any, is far different in kind and degree than in the case of Bose. More to the point, the dispute between the parties is harder to conceptualize as arising out of a single occurrence; each defendant has what is essentially an individualized dispute with Plaintiff over whether it has the right to sell products bearing the term "Weezer" without paying Plaintiff a licensing fee. The case for joinder in such circumstances is relatively weak.

This case shows how the *Bose* approach can go too far, particularly where the facts extend beyond those of *Bose* itself. Plaintiff argues that joinder is proper, at least as to those defendants who sell clothing bearing the mark, "Weezer." But take just the first ten defendants. (Dkt. 13-1.) Seven of them sell T-shirts; two of the other three sell posters, and the third sells phone cases. The designs on the T-shirts do not look remotely alike, except that they use the word "Weezer." Plaintiff argues that some of the ninety-seven defendants—two here, three there—use similar terminology and phrasing in their online listings, but none of these seven T-shirt sellers uses terminology or phrasing that matches any of the other six. There is nothing more than "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,'" to link the claims against these defendants together. *See Anagram*, 2025 U.S. Dist. LEXIS 43230, at *6 n.4 (quoting *Iqbal*, 556 U.S. at 678); *Bug Art*, No. 24 C 7777, Dkt. No. 28, at 5. There are no factual allegations making it plausible that these are anything more than seven independent internet store operators, each of whom decided on its own to try to sell shirts to Weezer fans. *See Toyota Motor Sales*, No. 24 C 9401, at 3, Dkt. No. 27 ("I went to a concert a few weeks ago. When I got off the train, a vendor was selling what I suspected to be counterfeit t-shirts bearing the performer's likeness. . . . I encountered a second vendor selling some of the same t-shirts. . . . One could even argue that they 'swarmed' the concert venue that evening. But that does not establish a 'logical relationship' between them."); *see also Anagram*, 2025 U.S. Dist. LEXIS 43230, at *14-15 ("Under plaintiff's logic, every drug dealer in the greater Chicagoland area—by virtue of the fact that they are engaged in the same unlawful activity in the same general vicinity—

is engaged in a communal, rather than competitive, undertaking. The logic does not hold water."). That defendants all chose to sell Weezer T-shirts (or other Weezer merchandise) is not enough to join them in one action.

The Court recognizes that Plaintiff need only make allegations that *plausibly* establish the requisite factual connection between the defendants. Plausibility is not a high standard. *See Swanson*, 614 F.3d at 404 (explaining that assessing plausibility entails asking, "*could* these things have happened, not *did* they happen"). The Court was previously persuaded that taking Schedule A plaintiffs' allegations as true and drawing all reasonable inferences in the plaintiffs' favor required the Court to accept their joinder theory until defendants appeared to dispute it. But, again, "judicial experience" now points in a different direction. *See Anagram*, 2025 U.S. Dist. LEXIS 43230, at *14-15 (explaining the practical problems that arise when the *Bose* approach is followed). Experience has shown that permitting mass joinder in Schedule A cases frequently results in "multiple defendants appear[ring], seek[ing] different relief, requir[ing] multiple hearings on varying motions, hav[ing] different dates, and so on." *Toyota Motor Sales*, No. 24 C 9401, Dkt. No. 27, at 4. "This creates friction within the case that complicates the 'managing and structuring civil litigation for fair and efficient resolution of complex disputes'" and undermines the interests of efficiency that Rule 20 is meant to promote. *Id.* (quoting *Cont'l Indem. Co. v. BII, Inc.*, 104 F.4th 630, 645 (7th Cir. 2024)). The better course is to take a preemptive and proactive approach to misjoinder, and, if Schedule A plaintiffs can show that certain defendants are commonly owned[1] or are working in concert, based on specific factual allegations, then the Court can consolidate the cases against those defendants, or join related defendants in a single case. *See Toyota Motor Sales*, No. 24 C 9401, Dkt. No. 27, at 4.

For the foregoing reasons, Plaintiff's complaint is dismissed for misjoinder. The action is not terminated. Plaintiff is directed to file an amended complaint against a single defendant or, if possible under the principles set forth above, a smaller group of defendants who are properly joined in a single action. The deadline for any amended complaint is 8/20/26. If Plaintiff does not file an amended complaint by that deadline, the Court will presume that he no longer wishes to pursue this matter and dismiss the case without prejudice for want of prosecution.

**SO ORDERED.** **ENTERED: July 28, 2026**



**HON. JORGE ALONSO**
**United States District Judge**

[1] *See In re: "Schedule A" Cases*, Standing Order 2025-04 ¶ 1 (D.N.J. Sep. 25, 2025) ("To satisfy Rule 20, each complaint shall consist of a single defendant or group of defendants acting under the same operator."), https://www.njd.uscourts.gov/sites/njd/files/StandingOrderreScheduleACases.pdf.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NEMAN BROTHERS & ASSOCIATES, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 24 C 05666 |
| | ) | Judge John J. Tharp, Jr. |
| THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED IN SCHEDULE A, | ) | |
| Defendants. | ) | |

**ORDER**

For the reasons set forth in the Statement below, the motion to dismiss for misjoinder filed by defendants Oxiuly, YT Fashionstore, and Sureple Dresses [89] is denied.

**STATEMENT**

The plaintiff Neman Brothers & Associates, Inc. holds federal copyright registrations for two-dimensional textile designs and has sued 20 defendants for alleged copyright infringement. Neman alleges the defendants operate online stores via Amazon, TEMU, and Walmart, through which they sell products that feature, without license or permission, Neman's copyrighted designs. Defendants Oxiuly, YT Fashionstore, and Sureple Dresses are three of the defendants, and have moved to dismiss Neman's complaint for improper joinder.

Relying almost solely on the reasoning in *Tang v. Schedule A*, No. 23-cv-4587, ECF No. 88, a non-binding case involving joinder of design patent defendants pursuant to 35 U.S.C. § 299(a)(1), these defendants argue that Neman's allegations that the defendants are acting in concert are insufficient to support joinder under Fed. R. Civ. P. 20(a)(2)(A). For the same reasons set forth in the ruling on defendant Ranphee's motion to dismiss [101], the Court rejects that argument.

Neman alleges that the defendants use the same third-party marketplace platforms (Amazon, Temu, and Walmart), and maintain similar profiles on their online stores. Their listings feature similar, and in some cases identical, product photos, often with the same models. Neman asserts that the allegedly Infringing Products are of a consistent (if inferior) quality and that similarities in printing demonstrate that the products are sourced from the same vendor, manufacturer, or printing facility. Neman also points to the common tactics the defendants employ to obscure the sellers' identities, and notes the defendants' use of similar Search Engine Optimization ("SEO") tactics. These allegations suggest that the defendants are not acting independently but, rather, are endeavoring to "take advantage of a set of circumstances—the

anonymity and mass reach afforded by the internet and the cover afforded by international borders—to violate [the plaintiff's copyrights] with impunity." *Bose Corp. v. Schedule A*, 334 F.R.D. 511, 516 (N.D. Ill. 2020).

Neman further alleges, citing to a Department of Homeland Security Report, that "to be able to offer the counterfeit products for sale substantially below the cost of a license to use the Subject Designs, while still being able to turn a profit after absorbing the cost of manufacturing, printing, advertising, and shipping requires an economy of scale only achievable through a cooperative effort throughout the supply chain." Compl. ¶ 22, ECF No. 1. The DHS report confirms that "counterfeiters act in concert through coordinated supply chains and distribution networks to unfairly compete with legitimate artists while generating huge profits for the illegal counterfeiting network." *Id*. This is further support for Neman's contention that its claims arise out of the same transaction, occurrence, or series of transactions or occurrences.

In sum, Neman sufficiently alleges common, surreptitious conduct that is the "defining aspect of the harm" alleged and creates a logical relationship among the parties and claims in the case. *Bose Corp*., 334 F.R.D. at 517. The Court also cannot see any prejudice or expense the defendants will incur if joinder is permitted, particularly in the nascent stages of this action. The defendants are still free to litigate their claims to the extent they wish, or settle with the plaintiff, and the fact of joinder will not prevent or impede them from doing so.

The Court therefore declines to sever the parties or dismiss for misjoinder.



John J. Tharp, Jr.
United States District Judge

Date: January 23, 2025

**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| AIDONG ZOU, | ) | |
| | ) | |
| *Plaintiff*, | ) | No. 23 C 16600 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| THE ENTITIES AND INDIVDUALS IDENFIED IN ANNEX A, | ) | |
| | ) | |
| *Defendant*. | ) | |
| | ) | |

**ORDER**

Plaintiff Aidon Zou filed this action against 149 defendants alleging violations of federal copyright law pursuant to 17 U.S.C. § 501 *et seq*. (Dkt. 2). A subset of the defendants—Duailipin (#5), Alayger (#6), VRPQ (#8), OLDSH (#1), RRGIOH (#2), Shenzhen Tinff Technology Co., Ltd. (#11), and SUMMERJOY's (#143) (hereinafter "Defendants")—moved to sever Zou's claims against them from his claims against the remaining defendants. For the reasons discussed below, the Court denies Defendants' Motion to Sever [38].

**BACKGROUND**

Zou holds copyrights for two teddy bear slipper products, which protect the "[s]culptural features" that are "capable of existing independently of the utilitarian aspects" of the slipper. (Dkts. 2 at ¶¶ 62–63, 2-1, 2-2). The copyrights were both registered in November 2023, but they bear dates of first publication in July 2019 and July 2020 respectively. (Dkts. 2-1, 2-2).

At some point after making his slippers available for purchase online, Zou realized that online merchants were selling similar products. (*Id*. at ¶ 3). Zou filed this action in December 2023, alleging that a group of 149 foreign individuals and entities violated his copyrights. (*Id*. at ¶ 4).

Defendants operate various "e-commerce stores" on third-party online platforms wherein they sell allegedly unauthorized reproductions Zou's copyrighted slippers. (*Id*. ¶¶ 3-6). Zou claims that Defendants all purchase their infringing products from one or more major manufacturers in China. (*Id*. at ¶ 5). Defendants now move to sever the claims against them. (Dkt. 38).

**LEGAL STANDARD**

Under Rule 20, "[p]ersons ... may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question

of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). In addition to the two requirements of Rule 20(a)(2), the Court also considers whether joinder would prejudice any party or result in needless delay. At root, "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties, and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Though not binding on this Court, in many courts such requirements for joinder are "liberally construed in the interest of convenience and judicial economy in a manner that will secure the just, speedy, and inexpensive outcome of the action." *Lane v. Tschetter*, 2007 WL 2007493, at *7 (D.D.C. July 10, 2007). An examination of each of these requirements shows that joinder is proper at this time.

**DISCUSSION**

Defendants filed a motion to sever claims against them from those against the other remaining defendants. (Dkt. 38). Defendants' motion asserts that joinder is improper because Zou has not met the requirements for permissive joinder under Federal Rule of Civil Procedure 20. (Dkt. 39 at 1). Specifically, Defendants assert that Zou failed to show that his claims against Defendants arise out of the same transaction, occurrence, or series of occurrences. (*Id*.). This argument is unavailing at this stage of the litigation.

Courts generally find that claims against different defendants arise out of the same transaction or occurrence if there is a logical relationship between the separate causes of action. *See In re Price*, 42 F.3d 1068, 1073 (7th Cir. 1994) (discussing the "same transaction or occurrence" requirement in the context of Rule 13). *See also* 7 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1653 (3d ed. 2001); *Malibu Media, LLC v. John Does 1-6*, 291 F.R.D. 191, 201 (N.D. Ill. 2013).

Here, Zou has made well-pleaded allegations to satisfy Rule 20(a)(2)(A), which provides that joinder is proper if "any right to relief is asserted against [Defendants] jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences." This test is flexible, and courts are encouraged to seek the "broadest possible scope of action consistent with fairness to the parties." *Gibbs*, 383 U.S. at 724, 86 S.Ct. 1130. Zou alleges that "all "Defendants are engag[ed] in [a] systematic approach of" selling infringing products under various aliases that allow Defendants to conceal their true identities." (Dkt. 2 at ¶¶ 51-53). Zou further claims that Defendants, acting in concert, employ and benefit from substantially similar advertising and marketing strategies. (*Id*. at ¶ 10).

Taking Zou's allegations as true, there is a clear logical relationship between Defendants' actions, as each Defendant copied Zou's work, manufactured counterfeit versions, and set up online stores to sell the counterfeits under a cloak of anonymity. Based on these allegations, Zou sufficiently alleged that each Defendants' infringement is part of the same series of occurrences.

Also, Zou alleges that Defendants each contracted with manufacturers and customers to produce and sell infringing products. (Dkt. 2 at ¶ 5). Thus, Defendants also participated in the same series of transactions which violated Zou's copyrights. Further, it bears mentioning that although

Defendants claim that they are not acting in concert, they move as one to sever the claims against them.

Zou's well-pleaded allegations also satisfy Rule 20(a)(2)(B), which provides that joinder is proper if "any question of law or fact common to all defendants will arise in the action." Against Defendants, Zou alleges use of third-party manufacturers and online retailers to facilitate their production and sale of infringing products. Consequently, the factual inquiry into the means and methods used in any alleged copyright infringement will be substantially identical, as the methods Zou uses to investigate, uncover, and collect evidence about any infringing activity will be the same as to each of the Defendants. The Court recognizes that each Defendant may later present different factual circumstances to support individual legal defenses. "Prospective factual distinctions, however, will not defeat the commonality in facts and legal claims that support joinder under Rule 20(a)(2)(B) at this stage in the litigation." *First Time Videos, LLC v. Does 1-500*, 276 F.R.D. 241, 252 (N.D. Ill. 2011).

Finally, joinder at this stage is consistent with fairness to the parties and in the interest of judicial economy because joinder will secure the just, speedy, and inexpensive conclusion for Zou and the remaining defendants. Joinder does not create any unnecessary delay, nor does it prejudice any party. If Defendants were severed, the ensuing additional cases would require their own proceedings. Zou would be prejudiced by such severance, as each resulting claim would require their own filing fees, a multiplication of expense that would further inhibit Zou's ability to protect his legal rights. Such obstacles would make it less likely that Zou could protect his copyrights in a cost-effective manner.

The Court has little reason to believe that any risk arises of unfairness or denial of individual justice to Defendants at this stage in the litigation. The case against each of them will be individually considered for purposes of any ruling on the merits. At this stage, joinder of Defendants promotes judicial economy while protecting the interests of the parties for a just, speedy, and inexpensive outcome. Joinder at this stage is therefore consistent with fairness to the parties. Additionally, the two requirements of permissive joinder under Rule 20(a)(2) have been satisfied. The motion to sever is therefore denied without prejudice.

## **CONCLUSION**

For these reasons, the Court denies Defendants' motion to sever [38] for improper joinder.

Virginia M. Kendall
United States District Judge

Date: March 8, 2024

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MILWAUKEE ELECTRIC TOOL CORPORATION, | ) | |
| Plaintiff, | ) | |
| v. | ) | 24 C 12487 |
| THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A," | ) | Judge Charles P. Kocoras |
| Defendants. | ) | |

**ORDER**

Defendant JINNAN-US's motion to dismiss [85] is denied. See Statement.

**STATEMENT**

This case arises out of the alleged infringement of Plaintiff's trademarks by over 80 defendants, including Defendant A3K19X9DNOLWWZ ("JINNAN-US"). Before the Court is JINNAN-US's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and improper joinder.

The following facts come from the Complaint and are assumed true for the purposes of this motion. *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013). The Court accepts as true well-pleaded facts and draws all reasonable inferences in Plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011).

Plaintiff is the owner of Milwaukee Electric Tool Corporation ("Milwaukee"), a company that develops, manufactures, and markets power tools. Plaintiff owns various registered trademarks in connection with its business. Plaintiff's trademarks are distinctive and used to identify its merchandise as authentic products.

Defendants, including JINNAN-US, are international entities that engage in the business of selling counterfeit Milwaukee products to consumers via interactive commercial websites and online marketplaces such as Amazon, iOffer, and Temu. Defendants' business extends across the United States, including here in Illinois. Defendants use the Milwaukee trademarks for the advertisement, distribution, offering for sale, and sale of their counterfeit products.

Defendants design their online stores to appear as though they are selling genuine Milwaukee products. The stores often contain images and designs that could lead a consumer to believe that they are purchasing products from an authorized website. Defendants also use Milwaukee trademarks in the content and meta tags of their website to attract traffic to their website. Plaintiff emphasizes that it has not licensed or authorized Defendants to use Milwaukee trademarks and that none of the Defendants are authorized retailers of Milwaukee tool products.

To protect its brand, Plaintiff filed this suit against 84 defendants alleging: (1) federal trademark infringement and counterfeiting; (2) false designation of origin; and (3) violation of the Illinois Uniform Deceptive Trade Practices Act. Defendant JINNAN-US moves to dismiss the claims against it, contending that the Complaint fails

to attribute any unlawful conduct specifically to JINNAN-US and that Plaintiff improperly joined the parties in this action.

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of the complaint, not the merits of the case." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in the Complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion to dismiss, the Complaint only needs to include "sufficient facts to state a claim for relief that is plausible on its face." *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011) (internal quotations omitted).

**DISCUSSION**

**I. Sufficient Pleading under F.R.C.P. 8(a)**

JINNAN-US first argues that Milwaukee failed to meaningfully differentiate among the Defendants in its Complaint, leading to confusion as to which claims pertain to which Defendant. Put differently, JINNAN-US takes issue with Plaintiff's group pleading. *See Cosby v. Rodriquez*, 711 F. Supp. 3d 983, 997 (N.D. Ill. 2024) ("Group pleading, in which a plaintiff refers to a collective group of defendants as opposed to specifically identifying individual action, can run afoul of these pleading requirements.") (citing *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013)).

Rule 8(a) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the. . .

claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The key to satisfying Rule 8 is that [a plaintiff] "put[s] the defendants on notice of what exactly they might have done to violate [its] rights." *Kuri v. City of Chicago*, 2014 WL 114283, at *7 (N.D. Ill. 2014). Because the Complaint fails to tie any of Plaintiff's trademarks to JINNAN-US specifically, JINNAN-US argues that the Complaint fails to put it on notice of the claims brought against it.

"Group pleading, however, is not per se improper. A complaint survives if any group pleadings, taken along with any individual pleadings, create the plausible inference that each defendant is liable." *Gorgas v. Amazon.com, Inc.*, 2023 WL 4209489, at *3 (N.D. Ill. 2023). "Under Federal Rule of Civil Procedure 8, collective pleading is permissible so long as the complaint places each defendant on notice of why they are being sued." *Green Dolphin Cap. LLC v. JPMorgan Chase Bank, N.A.*, 2020 WL 5545700, at *2 (N.D. Ill. 2020). We find that the Complaint meets this standard.

The Complaint "notified [JINNAN-US] which trademark registrations were infringed, how the trademark allegations were infringed, and that the infringement was done without authorization." Dkt. # 124 at 4. The Complaint also alleges that Defendants, including JINNAN-US, "deceive unknowing consumers by using the MILWAUKEE Trademarks without authorization within the content, text, and/or meta tags of their websites to attract various search engines crawling the Internet looking for websites relevant to consumer searches for MILWAUKEE TOOL products" and that Defendants "knowingly and willfully used and continue to use the MILWAUKEE

Trademarks in connection with the advertisement, distribution, offering for sale, and sale of counterfeit MILWAUKEE TOOL products into the United States and Illinois over the Internet." *Id.* ¶ 16, 21. These allegations make it plausible that JINNAN-US infringed on Plaintiff's trademark rights. That is all the *Twombly/Iqbal* plausibility pleading standard requires. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) ("a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (quoting *Twombly,* 550 U.S. at 570). JINNAN-US's motion to dismiss is denied on this issue.

**II. Nominal Fair Use**

JINNAN-US next argues that Plaintiff's claims against it should be dismissed because its use of the "MILWAUKEE" trademark is nominal fair use. Nominal fair use "occurs when the alleged infringer uses the trademark holder's mark to describe the trademark holder's product, even if the alleged infringer's ultimate goal is to describe his own product." *Tireboots by Universal Canvas, Inc. v. Tiresocks, Inc.*, 2021 WL 5833986, at *3 (N.D. Ill. 2021) (internal quotations omitted).

The Seventh Circuit has yet to recognize the nominal fair use defense. *Slep–Tone Entertainment Corporation v. Coyne*, 41 F.Supp.3d 707, 717 (N.D. Ill. 2014) ("[i]t does not appear that any circuit has joined the Ninth Circuit's recognition of the nominative fair use defense."). We decline to adopt that defense here.

### III. Improper Joinder

JINNAN-US's closing argument is that it was improperly joined as a party. Under Rule 20(a)(2), defendants may be joined in a single action only if: (1) the claims against them are asserted "with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and (2) there must be a "question of law or fact common to all defendants." Fed. R. Civ. P. 20(a)(2)(A)-(B). "A party that seeks joinder bears the burden of demonstrating that joinder is proper under [Rule] 20(a)(2)." *Damian v. EIN CAP, Inc.*, 2023 WL 2561586, at *2 (N.D. Ill. 2023) (internal quotations omitted).

Plaintiff alleges that Defendants are operating under the same transaction, occurrence, or series of transactions or occurrences "because (1) defendants use nondescript Seller Aliases; (2) no credible information regarding defendants' physical addresses is provided; and (3) defendants show evidence of market coordination, *i.e.*, using the same advertising and marketing strategies to target consumers while attempting to evade enforcement." Dkt. # 124 at 18. Plaintiff also argues that "[e]ven if defendants are not directly coordinating, Plaintiff alleges that defendants take advantage of a set of circumstances – the anonymity and mass reach afforded by the internet and the cover afforded by international borders – to violate [Plaintiff's] designs with impunity." *Id*. at 19. Plaintiff also states that joinder at this stage serves to conserve judicial resources, as requiring Plaintiff to file cases against each Defendant

individually would be extremely cumbersome and would not benefit either the party or the Court. We agree.

The principles governing joinder guide us here. The purpose of the joinder doctrine is to conserve judicial resources, reduce redundancy, and to save costs. *See In re BitTorrent Copyright Infringement Cases*, 2013 WL 501443, at *1 (C.D. Ill. 2013). Forcing Plaintiff to file separate cases against 80 different defendants would be an undue burden for both Plaintiff and the courts. Plaintiff has met its burden of establishing that joinder is proper in this case. JINNAN-US's motion to dismiss for misjoinder is denied.

**IV. Attorney's Fees**

The Court denies JINNAN-US's motion for attorney fees, because it has not shown that this case is exceptional as required by 15 U.S.C. § 1117. Each party is responsible for their own expenses.

**CONCLUSION**

For the foregoing reasons, Defendant JINNAN-US's motion to dismiss [85] is denied. It is so ordered.

Dated: 5/28/2025

Charles P. Kocoras
United States District Judge